IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| PRISCILLA GRAY-HAMPTON, ) | |
| ) | CIVIL ACTION NO. 0:06-3088-JFA-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |



The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging disability as of June 15, 2001 due to chronic back pain, headaches, depression, general anxiety disorder, and trigger fingers. (R.pp. 45-47, 55-57, 63). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on April 20, 2004. (R.pp. 609-655). The ALJ thereafter denied Plaintiff's claims in a decision issued October 26, 2004. (R.pp. 10-21). The Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final

decision of the Commissioner. (R.pp. 5-7).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).



**Discussion**

A review of the record shows that Plaintiff, who was thirty-nine (39) years old when she alleges she became disabled, has a high school education with past relevant work experience as an aircraft maintenance specialist, bar tender, bus driver/assistant teacher, substitute teacher, assembly line worker, laundry presser, ATM technician, disc jockey, and television host/producer. (R.pp. 45, 76). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff was unable to perform any of her past relevant work, she nevertheless retained the residual functional capacity to perform a restricted range of light work[1], and was therefore not disabled. (R.pp. 20-21).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to properly assess the opinion of Plaintiff's treating psychiatrist, Dr. Denise Evans; by failing to properly evaluate Plaintiff's mental impairment; by failing to adequately explain his findings regarding Plaintiff's residual functional capacity (RFC); and by failing to properly assess Plaintiff's credibility. However, after careful review and consideration of the arguments and evidence presented, the undersigned finds that there is substantial evidence in the record as that term is defined in the Social

---

[1]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

3



Security Act to support the conclusion of the ALJ that Plaintiff was not disabled during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

**I.**

Plaintiff first complains that the ALJ did not accept the findings of Dr. Evans, who Plaintiff argues should be accorded the status of a "treating" physician. The record reflects that Plaintiff received her medical care primarily from Veteran's Administration medical centers dating back to March 2001, and had been seen and evaluated by several VA physicians and other medical providers. See generally, (R.pp. 134-135, 141,146-148, 152, 161, 165, 182, 187, 191-192, 200-201, 211-212, 222-224, 228, 235, 240, 245, 256-259, 266, 277, 290, 293-300, 320, 326-327, 335, 338-339, 341, 343, 347, 351-352, 358, 374, 385, 405, 409, 414-415, 417, 490-497, 504-507, 513-519, 525, 528, 538-549). Dr. Evans was one of the physicians on staff at one of these facilities.

The VA medical records reflect that Plaintiff has been diagnosed with depression, anxiety and bi-polar disorder, and has also complained of panic attacks. During an appointment on June 6, 2001 (shortly before her alleged disability onset date of July 15, 2001), she was found to be alert, oriented, and in no acute distress, with a GAF of 60.[2] Plaintiff was working at that time, but stated she was quitting her job as a TV broadcaster so that she could relocate to Anderson. (R.p. 141). Plaintiff returned to the VA the following month (July 5, 2001), and was noted to "not [be] overtly depressed" at that time. Plaintiff was again assessed with a GAF of 60. (R.pp. 134-135).

During a visit to the VA on November 8, 2001, it was noted that Plaintiff continued

---

[2]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). A GAF of 51 to 60 indicates that only moderate symptoms are present. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000).



to have "anxiety but not of the proportion of panic." Even so, she told Dr. David Sunde that she was no longer looking for employment because "she [did] not feel that she should have to do anything she does not like." (R.p. 187). However, Plaintiff apparently did find job opportunities to her liking, as by February 7, 2002, she reported that she had been assisting with marketing a local musical group and that she had good prospects for a job with a recording company. (R.p. 155).  At Dr. Sunde's request, the VA attempted to assist Plaintiff with finding a residence, during which time she stayed at a VA facility. (R.pp. 152, 290).  At her admission to the VA facility on March 1, 2002, Plaintiff was found to be only mildly depressed with a GAF of 55. It was anticipated that with medication management Plaintiff would be able to return to work, and by April 12, 2002, it was noted that Plaintiff was working part time as a disc jockey and as a waitress, but planned on finding more stable employment. (R.p. 245). This was, of course, all occurring well after Plaintiff alleges her condition had become disabling on June 15, 2001.

On April 22, 2002, a mental status evaluation was performed on the Plaintiff by Dr. John Whitley. Plaintiff's chief psychological complaint was panic attacks. Plaintiff reported that she was able to perform and organize her daily activities, care for herself, drive, shop for food and clothes for herself and her family, care for a home including yard work and caring for children with assistance, and manage her own finances. Her affect was normal, although her mood was sad. She demonstrated poor insight and judgment and appeared depressed, but no anxiety was noted. Dr. Whitley opined that Plaintiff's ability to deal with stress was limited, as was her ability to interact with others in a meaningful and predictable manner, but that she could "function in a work environment that is low stress." He assessed Plaintiff with a GAF of 60. (R.pp. 214-217).

Plaintiff was seen the following day, April 23, 2002, for another examination, this



time by Dr. Eugene McManus. This examination was apparently for the purpose of assessing Plaintiff's *physical* condition and abilities. Dr. McManus noted that Plaintiff had worked as a DJ in an Augusta night club until two weeks previous. On examination Plaintiff's physical condition was found to be essentially normal except for decreased vision in her left eye. Plaintiff was diagnosed with recurrent and chronic sinusitis, suspect sciatica, panic attacks and anxiety in the last six months, which were in all likelihood the cause of "transient trigger fingers", and intermittent muscular pain of an unknown etiology. (R.pp. 218-221).

Plaintiff was discharged by the VA to reside in Section 8 housing on May 10, 2002. It was noted that her mental health and physical health problems were stable at that time, although she had chosen not to "continue in the job she [had] obtained in the community...." Plaintiff was also encouraged to seek counseling in regards to a "drug issue". Plaintiff had a current GAF at that time of 75, with a GAF of 80[3] within the past year. (R.pp. 224-228). However, when Plaintiff reported for a follow-up visit on May 23, 2002 and was seen by Dr. Evans[4], Dr. Evans assigned her a GAF of only 40.[5] (R.p. 417). No explanation is provided for why Dr. Evans assigned Plaintiff with such a low GAF score, which was at significant variance with the GAF scores Plaintiff had previously been assigned. Further, up to that time Plaintiff had been participating in therapeutic work

---

[3] A GAF score between 71 and 80 indicates that "if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 32 (4th ed. 1994).

[4] This was apparently the first time Plaintiff had been seen by Dr. Evans. See (R.p. 403).

[5] "A GAF score of 31-40 indicates 'some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood.'" Kirves v. Callahan, No. 96-5179, 1997 WL 210813 at **2 (6th Cir. Apr. 25, 1997).



activity where it had been specifically noted that she had been able to interact with staff and peers in an appropriate manner, observations at odds with such a low GAF score. (R.pp. 408-414).

Just three days later, on May 26, 2002, Plaintiff's medical records were reviewed by psychologist Dr. Larry Clanton, who completed a psychiatric review technique form. (R.pp. 458-471). Dr. Clanton opined that Plaintiff suffered from depression, anxiety, and a panic disorder without agoraphobia, and that she also engaged in cannabis abuse. He found that Plaintiff was only mildly restricted in her activities of daily living; moderately restricted in her ability to maintain social functioning and in maintaining concentration, persistence or pace and in her ability to understand; with no episodes of decompensation. (R.pp. 461, 463, 466, 468). Dr. Clanton also completed a mental residual functional capacity assessment, in which he found that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, to interact appropriately with the general public, and to set realistic goals or make plans independently of others. Otherwise, Plaintiff had no significant limitations. (R.pp. 472-473).

However, when Plaintiff returned to see Dr. Evans on June 20, 2002 for a routine follow-up, Dr. Evans again assigned Plaintiff a GAF of only 40. (R.p. 405). A few weeks later, Dr. Evans completed her own psychiatric review technique form, in which she opined that Plaintiff was markedly restricted in her social functioning and in her ability to maintain concentration, persistence of pace, and that she would also have one or two episodes of decompensation in a work like setting. (R.p. 310). Dr. Evans also indicated that Plaintiff had a complete inability to function independently outside the area of her home, even though in a separate section of her report she stated that Plaintiff had no restrictions in her activities of daily living. (R.pp. 310-311). When Plaintiff returned to the VA on August 27, 2002 for what was described as a routine follow-up, Dr. Evans again assigned

7



Plaintiff a GAF of 40. (R.p. 347). Plaintiff stated during that visit that she had had difficulty remembering to take her medication at times, and a change was made in her medications in order to "improve adherence." (R.p. 348).

Plaintiff continued to be seen at the VA clinic over the next few months for routine follow-ups, during which she generally denied suicidal ideation with her examinations being essentially normal. On only one occasion (September 24, 2002) was Plaintiff described as being "frequently tearful" with an anxious and dysphoric mood. Otherwise, the office notes from this period reflect that Plaintiff was found to be oriented, pleasant, and cooperative with a generally positive affect. Plaintiff would appear wearing a good bit of jewelry, she was adequately groomed and dressed, and even expressed renewed interest in the music business and discussed plans to attend a local networking event. Nevertheless, Plaintiff continued to be assigned a GAF of from 45 to 50 during these visits. See generally, (R.pp. 320, 327, 339, 341, 343).[6]

On February 3, 2003, psychologist Dr. Helen Clark reviewed Plaintiff's medical records and completed a psychiatric review technique form in which she found that Plaintiff was only mildly restricted in her activities of daily living, moderately restricted in her ability to maintain social functioning and concentration, persistence or pace, and would have no episodes of decompensation of extended duration. (R.p. 447). In a separate mental residual functional capacity assessment completed that same date, Dr. Clark opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions and carry out detailed instructions, and moderately limited in her ability to interact appropriately with the general public and to make plans

---

[6]Plaintiff was also seen for complaints of sinus and back pain during this same period of time, continuing through early 2003. See generally, (R.pp.331-333, 554).

8



independently of others, but that she was not otherwise significantly limited or restricted in her abilities.  (R.pp. 451-452).

Plaintiff continued to be seen at the VA during this period of time, with Plaintiff's appointment records (except for where it appears Plaintiff either cancelled appointments or did not show up for appointments) showing that she would always arrive promptly and was always adequately groomed and dressed in clean, casual clothes, and wearing a good bit of jewelry.  These records reflect that Plaintiff was having family and financial problems during this period of time, and she continued to be assessed by Dr. Evans as well as by Lorraine Braswell, a clinical psychologist, with a GAF of 40.  See generally, (R.pp. 537-552).

Plaintiff reported to a different VA medical center (in South Carolina) on May 19, 2003, where she received a complete physical examination.  Plaintiff was found to have no edema or cyanosis in any of her extremities with 5/5 strength throughout.  Plaintiff apparently stated that she needed a brace for her hands due to "trigger finger", but the examining physician noted that she did "not see where [trigger finger] was discussed in Augusta VA notes."  With respect to Plaintiff's mental health, Plaintiff told the physician that she was having racing thoughts and could not tolerate speed in the car anymore, that she was using marijuana and was currently homeless, and that her thoughts changed from being hopeless on some days to feeling a little better on others.  (R.pp. 502-508).  Plaintiff was referred to the mental health clinic, where she was seen on May 29, 2003.  Plaintiff related a history of family problems and abuse and described her chief complaint as being anxiety and depression, along with problems relating to living conditions and family issues.  As ususal, she was clean and neatly groomed, although at this time she appeared sad, depressed and anxious.  Plaintiff was assigned a GAF score of 45 by a mental service worker.  (R.pp. 494-499).



Plaintiff was subsequently seen by a psychiatrist on June 10, 2003, who reported that Plaintiff's main focus of attention was on obtaining stable housing. Plaintiff reported no presence of psychotic thoughts or delusions, no current suicidal or homicidal thoughts, and that she had a good appetite and good energy. The psychiatrist found Plaintiff to be alert, attending, cooperative, and verbally interactive, although her mood was angry, anxious, irritable and dysphoric.[7] Plaintiff was again assigned a GAF of 45. (R.pp. 492-493). Plaintiff subsequently returned to the Georgia VA clinic in October 2003, where she was seen by Dr. Evans, who assigned her a GAF of 40. (R.p. 519). Plaintiff continued thereafter to be seen at the Augusta VA. (R.pp. 513-518).

The ALJ reviewed this medical evidence together with Plaintiff's subjective testimony and concluded that Plaintiff was capable of work at the light exertional level as long as it was simple, routine work in a low stress environment with no decision making and no contact with the general public. (R.pp. 15-18). In reaching this conclusion, he gave Dr. Evans' opinions little weight, finding that they were not supported by the evidence as a whole. (R.p. 17); see Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [rejection of treating physician's opinion justified where treating physician's opinion was inconsistent with substantial evidence of record]. The undersigned can find no reversible error in the ALJ's findings, as other medical evidence in the record contradicts Dr. Evans' opinion as to the severity of Plaintiff's mental condition. See Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]. For example, on October 8, 2002 Plaintiff was assigned a GAF of 45 during a visit to the Augusta VA facility, even though

---

[7]Dysphoria is generally characterized as an unpleasant or uncomfortable mood, such as sadness or restlessness. Dysphoria refers only to a condition of mood and may be experienced in response to ordinary life events, such as illness or grief. Dysphoria is usually experienced during depressive episodes, but in people with bipolar disorder, it may also be experienced during manic or hypomanic episodes. http://en.wikipedia.org/wiki/Dysphoria



she was reported on that visit to have had a generally positive affect with Plaintiff herself reporting that she had a renewed interest in the music business and was making plans to attend a local networking event later that month, activities inconsistent with such a low GAF score. (R.p. 339). The evidence also reflects that Plaintiff was working at various jobs during the time period she alleges she was disabled, that she was able to engage in therapeutic work activity at odds with the low GAF score assigned by Dr. Evans, and that even when seen by Dr. Evans and others she was generally found to have a positive affect and would appear well groomed and dressed and wearing lots of jewelry. Indeed, much of the severity assigned to Plaintiff's condition appears to be based on Plaintiff's own description of the severity of her condition rather than on objective evidence. See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) [ALJ may properly reject physician's opinion that is based on the claimant's own subjective complaints]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

The medical records as a whole, including the records of Dr. Sunde and Dr. Whitley, provide support for the ALJ's decision; see Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to assessments of examining physicians]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as do the opinions of the state agency physicians who reviewed Plaintiff's medical records. See Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physician can constitute substantial evidence to support the decision of the Commissioner]; Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) [ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record]; see SSR 96-6p [Agency physicians are experts in the evaluation of medical issues for purposes of disability



11

claims]. While Dr. Evans obviously believed Plaintiff had a more severe mental condition, the ALJ properly exercised his authority in evaluating and weighing *all* of the evidence in reaching his decision. See Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]. The undersigned can find no reversible error in his having done so. Plaintiff's claim relating to the ALJ's treatment of Dr. Evans' opinion is without merit.

## II.

Plaintiff also complains that Plaintiff's mental impairment was not assessed in the manner required by the regulations. The Social Security regulations require that when a severe mental impairment is found, the degree of the claimant's limitation in the areas of social functioning; concentration, persistence or pace; and episodes of decompensation must be specifically determined and rated on a five point scale: none, mild, moderate, marked, and extreme. Further, this evaluation must be documented in the decision. See generally, 20 C.F.R. § 404.1520a [evaluation of mental impairments].

A review of the ALJ's decision reveals that he performed the required analysis, finding that Plaintiff's mental impairment resulted in moderate difficulties in maintaining social functioning; moderate deficiencies of concentration, persistence or pace; and no episodes of decompensation in work like settings of extended duration. (R.p. 18). Plaintiff's dispute with the ALJ's findings is based on her claim that the ALJ provided no rationale as to why her impairments were found to be only "moderate" in the two categories noted when Dr. Evans had found that she was "markedly" limited in these two categories. See (R.pp. 310-311). However, while the ALJ arguably could have done a better job in setting forth his findings, I do not find that the ALJ failed to properly consider the evidence with respect to Plaintiff's mental impairment or that he otherwise conducted

12



a flawed credibility analysis.  *Cf.* Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) ["An arguable deficiency in opinion -writing technique is not a sufficient reason for setting aside an administrative finding where...the deficiency probably had no practical effect on the outcome of the case"], quoting, Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987).

In making his decision, the ALJ referenced Dr. Whitley's findings that Plaintiff could work in a low stress environment, discussed the other medical evidence, and specifically noted that he had reviewed "all of the evidence of record" in making his decision. While the ALJ's findings with respect to the extent of Plaintiff's mental impairment is at odds with the opinion of Dr. Evans, they are supported by other medical evidence in the record, and indeed mirror the exact degree of limitation found by both Dr. Clanton and Dr. Clark in their reports.  SSR 96-6p [Agency physicians are experts in the evaluation of medical issues for purposes of disability claims].  The ALJ was not required to accept the more severe limitations found by some of the medical professionals in this case to the exclusion of the other evidence. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]. This claim is without merit.

## III.

Plaintiff's argument that the ALJ failed to evaluate her residual functional capacity in compliance with SSR 96-8p, which requires a discussion describing how the evidence supports the ALJ's conclusion, is also without merit.  The ALJ evaluated the medical records and evidence concerning Plaintiff's condition, noting Dr. Whitley's conclusion that Plaintiff could work in a low stress environment, Dr. McManus' findings of only limited physical restrictions, Plaintiff's ability

13



to engage in independent activities of daily living and was able to care for her daughter, and the report showing that the quantity and quality of Plaintiff's work met or exceed acceptable industry standards, among other conclusions, all of which are consistent with the ALJ's RFC findings. *Cf.* Roberts v. Masanari, 150 F.Supp.2d 1004, 1010-1011 (W.D.Mo. 2001). The evidence supports the ALJ's determination that Plaintiff could perform the physical demands of light work, and the ALJ's limitation of the Plaintiff to simple, routine work in a low stress environment is consistent with the mental limitations he found. *Cf.* Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; Smith-Felder v. Commissioner, 103 F.Supp.2d 1011, 1014 (E.D.Mich. June 26, 2000) [hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress].

Plaintiff's argument that the ALJ should have gone into even greater detail with respect to his findings is without merit, as "'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" Delgado v. Commissioner of Social Serv., 30 Fed.Appx. 542, 548 (6th Cir. 2002) (quoting Bencivengo v. Comm'r of Soc. Sec., 241 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)); Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002). See also Osgar v. Barnhart, No. 02-2552, 2004 WL 3751471 at *2 (D.S.C. Mar. 29, 2004), aff'd, 117 Fed.Appx. 896 (4th Cir. Jan. 5, 2005). The ALJ's discussion and analysis is sufficient to meet this standard in this case. Dryer v. Barnhart, 395

14



F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision].

**IV.**

Finally, Plaintiff's argument that the ALJ failed to properly consider and evaluate her subjective testimony is also without merit. The ALJ reviewed Plaintiff's testimony regarding the nature and extent of her limitations and compared this testimony with her activities and the objective medical evidence in finding that her testimony was not entirely credible. Hunter 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; The ALJ noted that the evidence indicated that Plaintiff is able to perform a wide range of light work activity, and that even Plaintiff testified that she could walk up to ten blocks, could lift up to thirty pounds, and that she engaged in such activities as grocery shopping and doing laundry. (R.pp. 17, 215, 617, 642-643). The ALJ also referenced the medical records of the VA, which showed that as late as May 2003 Plaintiff had no edema or cyanosis in any of her extremities with 5/5 strength throughout. (R.pp. 502-508). Plaintiff's mental limitations and abilities were also properly analyzed and discussed. See discussion, supra.

While more detail can almost always be provided in these types of reports, the undersigned can find no reversible error in the ALJ's treatment of Plaintiff's subjective testimony in conjunction with the objective medical evidence of record, nor do I found that the ALJ failed to consider all of Plaintiff's impairments or conducted a flawed credibility analysis. Dryer, 395 F.3d at 1211 [ALJ not required to specifically refer to every piece of evidence in the decision]. Further, the record in this case supports the ALJ's findings and conclusions. See Thomas, 331 F.2d at 543



[court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Cruse v. Bowan, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; *cf.* Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss."]; Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]. This argument is without merit.

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act

16



during the relevant time period. Therefore, it is recommended that the decision of the Commissioner

be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

December 17, 2007



17